IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN VRINER and LUCINDA VRINER, | ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) No.  21 C 1497 ) |
| TEVA PHARMACEUTICALS USA, INC., a Delaware Corporation, and McKESSON MEDICAL-SURGICAL INC., a Virginia Corporation, | ) Judge Virginia M. Kendall ) ) ) ) |
| *Defendants*. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs John and Lucinda Vriner bring this tort action against Defendants Teva Pharmaceuticals USA, Inc. ("Teva") and McKesson Medical-Surgical Inc. ("McKesson"). The Complaint alleges various claims in connection with the alleged use of the generic prescription drug methylprednisolone acetate`, which is produced by Teva and distributed by McKesson. (*Id.* at Count 1, ¶ 2). Specifically, Plaintiffs bring claims for: manufacturing defect (Count I); design defect (Count II); failure to warn (Count III); negligence (Count IV); *res ipsa loquitur* theory of negligence (Count V); and loss of consortium (Counts VI–X). Teva now moves for partial dismissal of Plaintiffs' Complaint, (Dkt. 14), and McKesson moves for dismissal of the Complaint in its entirety, (Dkt. 21). For the reasons set forth below, the Defendants' motions [14, 21] are granted.

**BACKGROUND**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor,

but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The following factual allegations are taken from Plaintiffs' Complaint, (Dkt. 1), and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Teva is a company that designs, manufactures, and sells methylprednisolone acetate. (Dkt. 1 at Count 1, ¶ 3). McKesson is a company that distributes the methylprednisolone acetate produced by Teva to medical care facilities, including Midwest Orthopaedics. (*Id.* at Count 1, ¶ 4).

On and prior to December 20, 2019, Mr. Vriner was a patient at Midwest Orthopaedics in Oak Park, Illinois. (*Id.* at Count 1, ¶ 1). At that time, Mr. Vriner received an injection in both of his knees of methylprednisolone acetate manufactured by Teva and distributed by McKesson. (*Id.* at Count 1, ¶¶ 1–4). Mr. Vriner subsequently experienced an infection in his knees leading to severe and permanent injuries. (*Id.* at Count I, ¶ 12). In addition, Mrs. Vriner suffered a loss of consortium through Mr. Vriner's injuries, including "material services, elements of companionship, felicity and sexual intercourse." (*Id.* at Count VI, ¶ 10).

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all factual allegations in the amended complaint and draw all permissible inferences in [the plaintiff]'s favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but the plaintiff must allege facts that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678. In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id.* at 679. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## DISCUSSION

Defendants Teva and McKesson have filed separate motions to dismiss Plaintiffs' complaint. Defendant Teva seeks dismissal of Count II for Product Liability (Design Defect), Count V for *Res Ipsa Loquitor* (Negligence), and Counts VII and X for Loss of Consortium. (Dkt. 14 at 2). McKesson requests dismissal of Plaintiffs' Complaint in its entirety. (Dkt. 21 at 2).

**I.      Teva's Motion to Dismiss**

**A.      Count II: Product Liability (Design Defect)**

Teva first moves to dismiss Plaintiffs' design defect claim as preempted by federal law pursuant to the U.S. Supreme Court's decisions in *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) and *Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013). (Dkt. 14 at 4–5). In response, Plaintiffs state that "[t]o the extent that this Court views *Mensing* and its progeny requiring the dismissal of any state law strict liability sounding in design defect, then Counts II and VII should be dismissed." (Dkt. 29 at 3).

The Supremacy Clause of the U.S. Constitution directs that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "Accordingly, it has long been settled that state laws that conflict with federal law are without effect." *Bartlett*, 570 U.S. at 479–80 (internal quotation marks omitted). Thus, if "it is impossible for a private party to comply with

both state and federal [law]," the state law is preempted. *Id.* at 480 (quotation omitted). *See also English v. General Elec. Co.*, 496 U.S. 72, 79 (1990) ("[S]tate law is pre-empted to the extent that it actually conflicts with federal law. . . . [such as] where it is impossible for a private party to comply with both state and federal requirements . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.") (citations omitted) (internal quotation marks omitted); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 984 (7th Cir. 2012) (explaining that "conflict preemption" arises when "compliance with both federal and state regulations is a physical impossibility") (citing *Arizona v. United States*, 567 U.S. 387, 399 (2012)).

The Supreme Court's decisions in *Mensing* and *Bartlett*, which address conflict preemption in the generic drug context, control this case. In *Mensing*, generic drug consumers sued generic drug manufacturers for failure to provide adequate warnings on the relevant drug's labels. 564 U.S. at 610. The Supreme Court held that the plaintiffs' labeling claims were preempted because federal law prohibits generic drug manufacturers from "independently" altering their labeling. *Id.* at 618–20 (citing 21 CFR § 314.150(b)(10)). Instead, "the warning labels of a brand-name drug and its generic copy must always be the same—thus, generic drug manufacturers have an ongoing federal *duty of 'sameness.'* " *Id.* at 613 (emphasis added). As a result, the defendants could not change the generic drug's labeling absent a change to the brand-name drug's labeling. *Id.* at 614–15. Plaintiffs' state tort claims were ultimately preempted because any change that the generic drug manufacturers made to the drug's labeling to comply with duties arising under state tort law would have violated federal law. *Id.* at 618.

*Bartlett* extended *Mensing*'s "duty of sameness" finding to design defect claims. In *Bartlett*, a generic drug consumer brought a design defect claim against a generic manufacturer for

failure to ensure the drug was reasonably safe. 570 U.S. at 481. Under relevant state law, a drug manufacturer could satisfy this duty "either by changing a drug's design or by changing its labeling." *Id.* at 482. Because the generic drug manufacturer was unable to change the drug's composition, however, the only way for it to fulfill its state law duty and "escape liability" was by changing the labeling. *Id.* at 475, 483–84. However, "[o]nce a drug—whether generic or brand-name—is approved, the manufacturer is prohibited from making any major changes to the 'qualitative or quantitative formulation of the drug product, including active ingredients, or in the specifications provided in the approved application.' " *Id.* at 477 (quoting 21 C.F.R. § 314.70(b)(2)(i)). Generic drug manufacturers "are also prohibited from making any unilateral changes to a drug's label." *Id.* (citing 21 C.F.R. §§ 314.94(a)(8)(iii), 314.150(b)(10)). Applying *Mensing*, the *Bartlett* Court therefore concluded that federal law prohibited the generic drug manufacturer "from taking the remedial action required to avoid liability" under state law – that is, changing the labeling. *Id.* at 475, 486–87 (citing *Mensing*, 564 U.S. 604, 131 S.Ct. 2567). As a result, federal law preempted the plaintiff's design defect claim.

Ultimately, under *Mensing* and *Bartlett*, the duty of sameness "preempts a state-law claim against a generic manufacturer if . . . that claim would require the manufacturer to redesign its drug, change its labeling, or exit the market in order to avoid liability." *Houston v. United States*, 638 Fed. App'x 508, 513 (7th Cir. 2016). Plaintiffs' state law design defect claim in this case alleges that Teva carelessly and negligently designed the drug at issue, and that the "defective and unreasonably dangerous design of the medication was a proximate cause of [Mr. Vriner's] injuries." (Dkt. 1 at Count II, ¶¶ 13–14). However, it would be impossible for Teva to comply with a state law duty to unilaterally change the design of the generic drug at issue, while also complying with its federal duty to keep the design the same. *Bartlett*, 570 U.S. at 480. Nor was

Teva required to exit the market to avoid liability. *E.g.*, *Houston*, 638 Fed. App'x at 513. As such, Plaintiffs' design defect claim is squarely preempted in accordance with *Mensing* and *Bartlett*. *See also Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016) (affirming dismissal of defective design claim concerning a generic drug as preempted by federal law, applying *Mensing* and *Bartlett*); *Houston*, 638 Fed. App'x at 513 (same); *see also, e.g.*, *Greager v. McNeil-PPC, Inc.*, 414 F. Supp. 3d 1137, 1141 (N.D. Ill. 2019) (dismissing defective design claim concerning a generic drug as preempted by federal law, applying *Mensing* and *Bartlett*); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14-cv-1748, 2015 WL 6859286, at *6 (N.D. Ill. Nov. 9, 2015) (same). Count II is therefore dismissed as to Defendant Teva.

### B. Count V: *Res Ipsa Loquitor*

"The doctrine of *res ipsa loquitur* permits an inference of liability on the part of the defendant if the plaintiff can demonstrate that certain conditions existed making it likely that the defendant was responsible for the injury." *Ruark v. Union Pac. R.R. Co.*, 916 F.3d 619, 626 (7th Cir. 2019). To establish this inference, plaintiffs must demonstrate: "(1) that the injuring instrumentality was within the exclusive management and control of the defendant, and (2) that the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care." *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 642 (7th Cir. 2006). *See also Pullen v. BC Int'l Grp., Inc.*, No. 19-cv-7810, 2020 WL 11772610, at *2 (N.D. Ill. June 22, 2020) (quoting *Heastie v. Roberts*, 877 N.E.2d 1064, 1076 (Ill. 2007)) (explaining same).

Teva argues that Plaintiffs' *res ipsa loquitor* count must be dismissed for three reasons: (1) *res ipsa loquitor* is not a distinct theory of recovery, separate from Plaintiffs' negligence claim; (2) allegations in Plaintiffs' Complaint expressly contradict a required element under the *res ipsa*

*loquitor* theory of negligence; and (3) Plaintiffs completely fail to plead one of the other required elements of their *res ipsa loquitor* theory against Teva. (Dkt. 14 at 7).

*Res ipsa loquitor* is a rule of evidence and not a standalone theory of recovery. *See, e.g.*, *Curry v. Boeing Co.*, No. 20-cv-3088, 2021 WL 1088325, at *14 (N.D. Ill. Mar. 22, 2021) (citing *Prado v. Evanston Hosp.*, 390 N.E.2d 1270, 1272 (Ill. App. 1979)); *In re Chi. Flood Litig.*, No. 93-cv-1214, 1993 WL 278553, at *15 (N.D. Ill. July 20, 1993) (explaining that under Illinois law, "*res ipsa loquitur* is a rule of evidence and not a separate theory of recovery"). Plaintiffs concede this point – and in fact *agree with Teva* that Count V "should be dismissed without prejudice to refile at a later time." (Dkt. 29 at 5). Count V is therefore dismissed without prejudice. It is unnecessary to delve into the merits of Plaintiffs' *res ipsa loquitor* theory at this early stage of the litigation. *See, e.g.*, *Curry*, 2021 WL 1088325, at *14.

    C.    **Counts VII, X: Loss of Consortium**

Loss of consortium claims are derivative in nature. Therefore, their viability depends on the success of the injured spouse's claims. *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1167 (7th Cir. 1997). As applicable here, Ms. Vriner's loss of consortium claims are dependent on the success of causes of action set forth by Mr. Vriner. Because Plaintiffs' product defect and *res ipsa loquitor* claims against Teva are dismissed, so too must Plaintiffs' derivative loss of consortium claims be dismissed. *See, e.g.*, *Banks v. LoanCare LLC*, 2021 WL 4192067, at *8 (N.D. Ill. Sept. 15, 2021) (dismissing loss of consortium claim where plaintiffs failed to plead a separate theory of liability because "[l]oss of consortium is not an independent cause of action and cannot stand on its own"); *Pierce v. Chi. Rail Link, LLC*, No. 03-cv-7524, 2005 WL 599980, at *15 (N.D. Ill. Mar. 15, 2005) (explaining same and dismissing derivative loss of consortium claim); *Samuel v. City of Chicago*, 41 F. Supp. 2d 798, 801 (N.D. Ill. 1999) (dismissing derivative

loss of consortium claim); *Hetreed v. Allstate Ins. Co.*, No. 96-cv-2021, 1996 WL 568784, at *2–3 (N.D. Ill. Oct. 3, 1996) (same). In addition, Plaintiffs concede that given the Court's findings above, Counts VII and X for loss of consortium should be dismissed. (*See* Dkt. 29 at 3 (stating that Count VII should be dismissed if "this Court views Mensing and its progeny requiring the dismissal" of Plaintiffs' design defect claim), 5 (stating that Count X "should be dismissed without prejudice to refile at a later time")). Consequently, Counts VII and X are dismissed as to Defendant Teva.

## II.     McKesson's Motion to Dismiss

McKesson moves to dismiss Plaintiffs' Complaint in its entirety on various grounds, including through application of the Illinois Distributor Statute, 735 ILCS 5/2-621; via *Mensing*/*Barlett* preemption as to Plaintiff's design defect claims; and due to Plaintiffs' failure to adequately plead their causes of action. (Dkt. 14 at 1–2; Dkt. 31 at 2). For the following reasons, McKesson's motion to dismiss is granted.

The Illinois Distributor Statute states that "[i]n any product liability action based in whole or in part on the doctrine of strict liability in tort," a non-manufacturer defendant who "file[s] an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage," § 2-621(a), shall be dismissed from the strict liability claim after the manufacturer has been sued and ordered to answer or otherwise plead, § 2-621(b). McKesson sets forth that it "plainly falls within the distributor exception delineated in section 2-621 because: (1) McKesson is a non-manufacturer defendant under the statute; (2) Plaintiff's allegations only identify McKesson as a non-manufacturer, specifically a distributor; and (3) the statute's requirement to identify the manufacturer has been satisfied, because Teva has been named as a defendant in this suit. (Dkt. 28 at 4–5 (citing *Goesel v. Boley Int'l (H.K.) Ltd.*, 664 F. Supp. 2d

923, 924 (N.D. Ill. 2009) (finding requirement to correctly identify the manufacturer "has of course been satisfied . . . by [Plaintiff's] own decision to have joined [the manufacturer] as a codefendant.")). As such, McKesson maintains that Plaintiffs' strict liability claims for manufacturing defect, design defect, and failure to warn (Counts I–III) must be dismissed. (*Id.*). *See also, e.g.*, *Clay v. Philip Morris USA Inc.*, No. 18-cv-03549, 2020 WL 5540196, at *3 (N.D. Ill. Feb. 20, 2020) (dismissing strict liability claim as to distributor defendant under section 2-621); *Jones v. UPR Prods., Inc.*, No. 14-cv-1248, 2015 WL 3463367, at *4 (N.D. Ill. May 29, 2015) (dismissing claims for manufacturing defect, design defect, and failure to warn as to the distributor under section 2–621).

Plaintiffs "do not oppose McKesson's motion to dismiss pursuant to the Illinois Distributor Act." (Dkt. 28 at 2). Going further, Plaintiffs "respectfully request this Honorable Court to grant Defendant McKesson Medical-Surgical Inc.'s Motion to Dismiss Counts I through X of Plaintiffs' Complaint at Law pursuant solely to the Illinois Distributor Statute, 735 ILCS 5/2- 621." (Dkt. 28 at 4). Because Plaintiffs expressly concede that dismissal of the Complaint in its entirety is appropriate as to Defendant McKesson – and otherwise finding dismissal appropriate pursuant to McKesson's briefing – the Court grants McKesson's motion to dismiss with prejudice.

## **CONCLUSION**

For the foregoing reasons, Teva's motion for partial dismissal [14] and McKesson's motion to dismiss [21] are granted.

_____
Virginia M. Kendall
United States District Judge

Date: October 23, 2021